# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CLAUDE C. BRITT, ) | |
| ) | No. 15 C 10320 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Claude C. Britt appeals the Commissioner's decision denying in part his application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## Background

Plaintiff filed an application for benefits on February 10, 2011, alleging a disability onset date of March 31, 2009. (R. 396.) His application was denied initially on August 15, 2011, and again on reconsideration on December 28, 2011 (R. 226-29, 237-44.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 1, 2013. (R. 85-149.) On September 12, 2013, the ALJ issued a decision denying plaintiff's application. (R. 201-10.) The Appeals Council remanded the case (R. 216-19), and a second hearing was held before an ALJ on February 17, 2015. (R. 43-84.) On March 19, 2015, the second ALJ found that plaintiff was disabled as of March 7, 2013, but not as of September 12, 2012, the date he

---

[1] On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited February 28, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

was last insured.[2] (R. 20-34.) The Appeals Council denied review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether she is unable to perform any other work existing in

---

[2]The disability determination was driven by the change in plaintiff's age category during the pendency of this case from "a younger individual age 45-49" to a 50-year-old person approaching advanced age. (*See* R. 32-34.)

significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (R. 23.) At step two, the ALJ found that plaintiff had the severe impairment of "right foot crush injury with neuropathy." (*Id.*) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*) At step four, the ALJ found that plaintiff could not perform his past relevant work but had the RFC to perform sedentary work with additional restrictions. (R. 24, 32.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed before March 7, 2013, but not after that date. (R. 32-33.) Thus, the ALJ concluded that plaintiff became disabled on March 7, 2013. (R. 33.)

Plaintiff contends the ALJ erred in assessing the opinion of agency examining expert, Dr. Hildreth, who opined that plaintiff can sit for only one and one-half hours and stand and walk for only one hour of an eight-hour workday and needs a cane or walker to walk more than fifty feet. (R. 986.) The ALJ gave this opinion "moderate weight" because: (1) Dr. Hildreth examined plaintiff only once; (2) she "over-relied on [plaintiff's] subjective reports" of his need for a cane; (3) the degree of difficulty she noted with his ambulation was inconsistent with the notes from plaintiff's treating physician; and (4) the exam occurred four months after the alleged disability onset date. (R. 30-31.)

3

The regulations do not, as plaintiff suggests, require the ALJ to accept Dr. Hildreth's opinions simply because she is an agency doctor or to give them more weight simply because she examined plaintiff. *See* 20 C.F.R. § 404.1527(e)(2)(i) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."); 20 C.F.R. § 404.1527(c)(1) (stating that ALJs "[g]enerally" give more weight to the opinions of examining sources). Moreover, there is no inconsistency between the RFC formulated by the ALJ, that plaintiff can perform sedentary work with certain limitations, and his assignment of moderate weight to Dr. Hildreth's opinion. Though the ALJ did not agree that plaintiff can only sit for ninety minutes of a workday, his RFC incorporated Dr. Hildreth's ten-pound lifting restriction, her limitation on plaintiff's walking and standing, and her opinion that plaintiff needs to use a cane. (*See* R. 985-86 (setting forth Dr. Hildreth's restrictions); R. 24 (stating that plaintiff has the RFC to perform sedentary work with certain restrictions, including "the use of a cane to ambulate in the workplace"); *see also* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."). Finally, though the ALJ said Dr. Hildreth "over-relied" on plaintiff's report of "need[ing] . . . an assistive device to ambulate" (R. 31), he nonetheless incorporated that limitation into the RFC. (*See* R. 24.) Thus, to the extent that statement was error, it was harmless. *See Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (stating that "the doctrine of harmless error . . . is fully applicable to judicial review of administrative decisions").

Plaintiff also faults the ALJ for failing to address the May 15, 2008 opinion of plaintiff's treating orthopedist, Dr. Vora, who said that plaintiff could "return to work . . . in a seated job . . . with . . . elevation as needed." (R. 628.) Though the ALJ should have addressed this opinion, *see* 20 C.F.R. § 404.1527 (stating that an ALJ "will evaluate every medical opinion [he] receive[s]"), his failure to do so was harmless. The record shows that Dr. Vora treated plaintiff immediately after the injury to his right great toe, almost a year before the alleged onset of his disability. (*See* R. 623 (noting that plaintiff was injured on May 3, 2008); R. 616-35 (Dr. Vora's records dated May 7 and 15, 2008); R. 396 (benefits application alleging a disability onset date of March 31, 2009). It also shows that the ALJ gave significant weight to more recent opinions of other treating, examining, and consulting doctors, none of which said that plaintiff was required to elevate his foot during the workday. (*See, e.g.*, R. 98-101 (Dr. Slodki's testimony); R. 172-83 (Dr. Jhaveri's report); R. 677-82, 689-98, 705-11, 867-80 (Dr. DeFrino's records);[3] R. 814-17 (Dr. Kodros' report); R. 981-96 (Dr. Hildreth's report).) Because the ALJ's acceptance of the other medical opinions is an implicit rejection of the foot elevation requirement in Dr. Vora's records, the ALJ's failure to address Dr. Vora's opinion explicitly is not a basis for a remand.[4]

Plaintiff also contests the ALJ's credibility finding. The Court notes that defendant recently issued new guidance for evaluating symptoms in disability claims, which "eliminate[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

---

[3] Dr. DeFrino, plaintiff's treating specialist, treated plaintiff on August 15, 2008, September 9, 2008, September 30, 2008, October 14, 2008, October 20, 2008, and January 8, 2009, and consistently noted work restrictions that limited plaintiff to light duty. (R. 677, 689, 692, 694, 696, 698.) However, the need for plaintiff to elevate his foot was not among those restrictions.

[4] We also note that Dr. Vora said plaintiff should keep his foot elevated "as needed," which is not necessarily inconsistent with a light duty work assignment. Dr. Vora did not "require" that plaintiff keep his foot elevated as plaintiff suggests. (Pl.'s Br. Supp. Reversing Dec. at 10.) Moreover, plaintiff does not direct us to any evidence that he was unable to work because constant foot elevation was, in fact, necessary.

Though SSR 16-3p was issued after the ALJ's decision in this case, it is appropriate to apply it here because it is a clarification of, not a change to, existing law, *see Pope v. Shalala*, 998 F.2d 473, 483-83 (7th Cir, 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999) (stating that courts give "great weight" to an agency's expressed intent to clarify a regulation), and is substantially the same as the prior regulation. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *with* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

The ALJ deemed plaintiff's allegations "not fully credible" because: (1) the functional limitations noted by his doctors were based on his subjective complaints, not objective evidence; (2) plaintiff's workers' compensation case coupled with his benefits application gave him an incentive to exaggerate his symptoms; (3) a surveillance video showed that plaintiff walked with a normal or nearly normal gait, not with a pronounced limp; (4) though plaintiff said he required an assistive device to walk, the record showed that he used one only sporadically; (5) plaintiff did not seek free or low cost treatment during the considerable period of time for which there were no treatment records; and (6) his long-term reliance on over-the-counter pain relievers was inconsistent with his allegation of constant, severe pain. (R. 31-32.)

As plaintiff correctly points out, it is improper for an ALJ to dismiss reports of pain simply because they are not corroborated by objective evidence. *See Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("[O]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.") (quotation omitted). But, as the Seventh Circuit subsequently explained,

> *Carradine* does not imply that an ALJ can *never* consider the lack of objective evidence in rejecting a claimant's subjective complaints. Such a reading would nullify 20 C.F.R. § 404.1529(c)(2) and (4), which require an ALJ to consider the objective medical evidence. Instead, *Carradine*, consistent with the regulations,

stands for the proposition that an ALJ cannot deny disability "*solely* because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2)

*Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (alteration and emphasis in original). That is not what the ALJ did here. Rather, he considered the lack of objective evidence as one of many factors in evaluating plaintiff's symptoms, as *Simila* instructs.

Plaintiff also argues that the video evidence of plaintiff's gait and his irregular use of an assistive device are not probative of his credibility because the record shows that his symptoms fluctuate. On the contrary, the record shows that plaintiff repeatedly said he always uses a cane or walker and has constant, severe pain. (*See, e.g.*, R. 59-60, 66-67, 72-73, 94-95, 121, 536-37, 545, 561, 849, 868-71, 873.) Given plaintiff's statements, the evidence with respect to his gait and use (or lack thereof) of a walker or cane is directly relevant to the evaluation of his symptoms and the ALJ's credibility assessment.

Plaintiff further asserts that it was improper for the ALJ to infer that plaintiff's "workers' compensation case combined with his disability application provide motivation . . . for exaggeration of his subjective symptoms." (R. 31.) However, the case he cites for that proposition, *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013), does not support it, *see id.* (stating that an ALJ could not discount the testimony of a claimant's fiancée because of the "potential for bias attributable to [the couple's] relationship," without explaining which part of the fiancée's testimony the ALJ disbelieved), and the only case the Court has found on the issue suggests that the potential for pecuniary gain may be an appropriate consideration. *Cf. Carter v. Astrue*, 413 F. App'x 899, 904 (7th Cir. 2011) (upholding the denial of benefits in a case where the ALJ "noted that [the claimant] was actively involved in litigation not only for workers' compensation benefits, but also for race and disability discrimination against his former

employer" and his "'substantial financial interest' in the outcome of these claims . . . likely had adversely affected his interest in returning to work"). Thus, the ALJ's consideration of plaintiff's financial interests is not a per se basis for remanding the case.[5]

In addition, plaintiff says the ALJ improperly inferred that a two-year gap in plaintiff's treatment record undercut his allegations of disabling pain, given plaintiff's explanation that he was without health insurance during that time. The regulations require ALJs to inquire about the reasons for a gap in treatment; they do not require the ALJ to believe whatever explanation is provided. *See* SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). The ALJ only gave plaintiff's explanation partial credit because: (1) "there [was] no showing that he attempted to attend any free or low costs clinics"; and (2) "he did not return to [the County hospitals] for treatment," though he had been treated there before. (R. 32.) The Court sees no error in that finding.

Plaintiff's final argument is that the ALJ failed to follow SSR 96-8p, which provides that "[t]he RFC assessment must include a discussion of why reported symptom-related functional

---

[5]We do agree that an ALJ cannot rely solely on a claimant's financial interest in obtaining disability benefits as a negative factor in making a credibility determination. If this were allowed, every claimant's testimony would be deemed less reliable on its face. We do not believe that such an approach is appropriate or allowable. However, in the instant case, plaintiff had financial interests beyond the disability benefits he was seeking. Moreover, and more importantly, here there was objective evidence (*e.g.*, the video of plaintiff ambulating with an unimpeded gait) on which the ALJ relied in making his credibility determination. Additionally, while the ALJ noted plaintiff had "motivation for secondary gain" (R. 31), in context, the ALJ does not appear to rely exclusively or predominantly on this consideration in making his credibility assessment.

8

limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Specifically, plaintiff argues that the ALJ failed to discuss in the RFC plaintiff's need to elevate his foot, his need to rest or lie down, and his concentration problems. However, the ALJ said that the last two issues were not medically-indicated functional limitations (*see* R. 32) and, as discussed above, the record does not show that foot elevation is such a limitation either. Accordingly, the Court rejects this claim of error.

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision, grants her motion for summary judgment [14], and terminates this case.

**SO ORDERED.**  **ENTERED:** July 27, 2017

_____
**M. David Weisman**
**United States Magistrate Judge**